**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARYGRACE CONEFF; CHRISTINE
ASCHERO; JOANNE ASCHERO; ALEX
ASCHERO; JENNIE BRAGG; GINA
FRANKS; AMY FRERKER; ADDIE
CHRISTINE LOWRY; STEVEN
SHULMAN; S. LEONARD SHULMAN;
MICHELLE JOHNS; STEVEN KNOTT;
LIESA KRAUSSE; DEVIN GILKER;
STEPHEN PAPALEO; ANDREW RUDICH;
and KELLY PETERSEN, on behalf of
themselves and all others similarly
situated,

*Plaintiffs-Appellees,*

v.

AT&T CORP.,

*Defendant,*

and

NEW CINGULAR WIRELESS SERVICES,
INC., f/k/a AT&T Wireless
Services Inc.; NEW CINGULAR
WIRELESS SERVICES, INC.; AT&T
CORP., a New York Corporation;
AT&T MOBILITY LLC, f/k/a
Cingular Wireless, LLC,

*Defendants-Appellants.*

No. 09-35563

D.C. No.
2:06-cv-00944-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

3141

Argued and Submitted
January 9, 2012—Seattle, Washington

Filed March 16, 2012

Before: Susan P. Graber, Raymond C. Fisher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Evan M. Tager, Mayer Brown LLP, Washington, D.C., for the defendants-appellants.

F. Paul Bland, Jr., Public Justice, P.C., Washington, D.C., and Leslie A. Bailey, Public Justice, P.C., Oakland, California, for the plaintiffs-appellees.

Michael D. Kinkley, Michael D. Kinkley, P.S., Spokane, Washington, for the amicus curiae.

---

## OPINION

GRABER, Circuit Judge:

Plaintiffs are current and former customers of Defendants, New Cingular Wireless Services, Inc., and AT&T Mobility, LLC (collectively, "AT&T"). Plaintiffs filed a class action against AT&T, which responded by seeking to enforce an arbitration agreement contained in its contracts with Plaintiffs. The district court refused to enforce the arbitration agreement on state-law unconscionability grounds, relying primarily on the agreement's class-action waiver provision. AT&T appeals. We reverse the district court's substantive unconscionability ruling and remand for further proceedings related to Plaintiffs' procedural unconscionability claims.

## FACTUAL AND PROCEDURAL HISTORY

In this putative class action, the named plaintiffs are residents of eight different states: California, Washington, Alabama, Arizona, Florida, Illinois, New Jersey, and Virginia. Plaintiffs initially filed several separate nationwide class actions, which were consolidated. Plaintiffs assert diversity jurisdiction under 28 U.S.C. § 1332(d) and allege unjust enrichment and breach of contract; they also allege violations of the Federal Communications Act and various state consumer-protection statutes.

Well before filing the lawsuits, each Plaintiff had entered into a service agreement, which included an arbitration clause, with AT&T. Plaintiffs acknowledge that a 2006 version of the arbitration provision applies. It requires individualized arbitration of "all disputes and claims," and it prohibits both class

actions and class arbitrations. At the district court, the parties agreed that the relevant service agreements contained a choice-of-law clause that selected the law of the state in which an individual plaintiff 's billing address is located.

Citing the arbitration provision, AT&T moved to compel arbitration. Plaintiffs argued that the arbitration provision was unenforceable due to both substantive and procedural unconscionability.

The district court denied AT&T's motion, applying Washington law and finding the class-action waiver substantively unconscionable and therefore unenforceable. Because it concluded that substantive unconscionability alone was a sufficient basis to void a contract under Washington law, the district court did not rule on Plaintiffs' alternative, procedural unconscionability argument. Because the arbitration provision stated that it would be unenforceable in its entirety if the class-action waiver were struck, the district court invalidated the entire arbitration agreement.

## STANDARD OF REVIEW

The validity of an arbitration provision, like that of any contract, is subject to de novo review. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). On choice-of-law matters, we also review de novo. *Bridge Fund Capital*, 622 F.3d at 1000.

## DISCUSSION

A.  *Substantive Unconscionability and Preemption Under the Federal Arbitration Act*

**[1]** When the district court denied the motion to compel arbitration, this court had held that the Federal Arbitration Act

("FAA"),[1] codified at 9 U.S.C. §§ 1-16, does not preempt state unconscionability law pertaining to class-action waivers in arbitration clauses. *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 852 (9th Cir. 2009). The district court understandably followed our precedent. But the Supreme Court later reversed our holding, in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). There, the Court considered California's judge-made rule classifying "most collective-arbitration waivers in consumer contracts as unconscionable." *Id.* at 1746. The Supreme Court held that the FAA preempts the California rule. *Id.* at 1753.

**[2]** *Concepcion* is broadly written. The Court framed the question as "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Id.* at 1744. The Court answered that question in the affirmative. By requiring arbitration to maintain procedures fundamentally at odds with its very nature, a state court impermissibly relies on "the uniqueness of an agreement to arbitrate" to achieve a result that the state legislature cannot. *Id.* at 1747 (internal quotation marks omitted). The Court observed that individualized proceedings are an inherent and necessary element of arbitration, *id.* at 1750-52, and concluded that a rule banning class-action waivers is therefore impermissible: "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.

In reaching that conclusion, the Court's majority expressly rejected the dissent's argument regarding the possible exculpatory effect of class-action waivers: "The dissent claims that class proceedings are necessary to prosecute small-dollar

---

[1]The FAA declares " 'a national policy favoring arbitration' " and supersedes " 'state legislative attempts to undercut the enforceability of arbitration agreements.' " *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 16 (1984)).

claims that might otherwise slip through the legal system. *But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.*" *Id.* at 1753 (citation omitted) (emphasis added).

Plaintiffs argue that *Concepcion* is distinguishable. None of their arguments is persuasive.

First, Plaintiffs argue that Supreme Court precedents require arbitration of statutory rights only if a prospective litigant " "'effectively may vindicate'" " those rights in the arbitral forum. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985))). As Plaintiffs note, the Supreme Court in *Green Tree* went on to observe that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* Plaintiffs cite *Green Tree* and other similarly reasoned decisions as being in tension with *Concepcion*. They argue that this tension must be resolved by reading an implied exception into *Concepcion*; specifically, they suggest that *Concepcion*'s rule permits state law to invalidate class-action waivers when such waivers preclude effective vindication of statutory rights.

We do not read *Concepcion* to be inconsistent with *Green Tree* and similar cases.[2] Although Plaintiffs argue that the

---

[2]Plaintiffs assert primarily state statutory rights, but *Mitsubishi*, *Gilmer*, *Green Tree* and similar decisions are limited to federal statutory rights. *Kilgore v. KeyBank, Nat'l Ass'n*, No. 09-16703, slip op. at 2651-52 (9th Cir. Mar. 7, 2012); *accord Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006); *see also Kaltwasser v. AT&T Mobility LLC*, No. C-07-00411, 2011 WL 4381748, at *5 (N.D. Cal. Sept. 20, 2011) (order) (stating that "it is not clear that *Green Tree*'s solicitude for the vindication of rights applies to rights arising under state law"). *But see Kristian v. Comcast Corp.*, 446 F.3d 25, 29 (1st Cir. 2006) (invalidating elements of an arbitration agreement "because they prevent the vindication of statutory

claims at issue in this case cannot be vindicated effectively because they are worth much less than the cost of litigating them, the *Concepcion* majority rejected that premise. Significantly, the arbitration agreement here has a number of fee-shifting and otherwise pro-consumer provisions, identical to those in *Concepcion*. As the Eleventh Circuit said in another case involving a nearly identical arbitration provision, "the *Concepcion* Court examined this very arbitration agreement" and concluded " 'that aggrieved customers who filed claims would be essentially guaranteed to be made whole.' " *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215 (11th Cir. 2011) (emphasis omitted) (quoting *Concepcion*, 131 S. Ct. at 1753).

The dissent in *Concepcion* focused on a related but different concern—even if the arbitration agreements guaranteed (via fee-shifting provisions) that complaining customers would be made whole with respect to damages and counsel fees, most customers would not bother filing claims because the amounts are too small to be worth the trouble. *See* 131 S. Ct. at 1761 (Breyer, J., dissenting) (observing that small-value claims will not be made, for example, when they involve "waiting at great length while a call is placed on hold"). That is, the concern is not so much that customers have no effective *means* to vindicate their rights, but rather that customers have insufficient *incentive* to do so.[3] That concern is, of

rights under *state* and federal law" (emphasis added)); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79-81 (D.C. Cir. 2005) (applying *Green Tree* to statutory rights under the law of the District of Columbia, but without exploring whether that case was limited to federal statutory rights).

But, because Plaintiffs raise at least one federal claim in their complaint, we decide the case with *Green Tree* in mind; Plaintiffs' federal claim fails under *Green Tree*.

[3]It is on this reasoning that we distinguish this case from a recent decision of the Second Circuit on a similar question. *See Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants'*

course, a primary policy rationale for class actions, as discussed by the district court in terms of deterrence. *Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248, 1259 (W.D. Wash. 2009). But as the Supreme Court stated in *Concepcion*, such unrelated policy concerns, however worthwhile, cannot undermine the FAA. 131 S. Ct. at 1753.

Even if we could not square *Concepcion* with previous Supreme Court decisions, we would remain bound by *Concepcion*, which more directly and more recently addresses the issue on appeal in this case. *Cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

**[3]** Next, Plaintiffs argue that the Washington Supreme Court's rule on unconscionability of class-action waivers, announced in *Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007), is meaningfully different from California's rule, announced in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), and rejected in *Concepcion*. But, as we have observed, the concerns underlying those two states' rules are "almost identical." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1221 (9th Cir. 2008). Indeed, *Scott* contains reasoning similar to the reasoning of *Discover Bank*, on which it relies heavily. *See In re Apple*, No. C-10-02553, 2011 WL 2886407, at \*4 (N.D. Cal. July 19, 2011) (order) ("[T]he leading case in Washington on the enforceability of provisions

---

*Litig.)*, 667 F.3d 204, 206 (2d Cir. 2012). There, the Second Circuit specifically found that "the only *economically feasible means* for plaintiffs enforcing their statutory rights is via a class action." *Id.* at 218 (emphasis added). To the extent that the Second Circuit's opinion is not distinguishable, we disagree with it and agree instead with the Eleventh Circuit, as discussed below in text.

that require individual arbitration borrowed heavily from *Discover Bank*. Because *Concepcion* overruled *Discover Bank*, it also overruled decisions based on *Discover Bank*." (citing *Scott*, 161 P.3d at 1006-08)). Thus, if California's substantive unconscionability rule is preempted by the FAA, then so is Washington's similarly reasoned rule.

Undaunted, Plaintiffs argue that class-action waivers are unconscionable under Washington law only on a case-by-case, evidence-specific finding of exculpation. Essentially, Plaintiffs argue that *Concepcion* would not apply to a sufficiently narrow, fact-based state-law rule for voiding class-action waivers.

*Concepcion*, particularly the section responding to the dissent, forecloses this argument. 131 S. Ct. at 1753. The Eleventh Circuit agrees. *See Cruz*, 648 F.3d at 1214 (acknowledging a factual record regarding the cost-effectiveness of individual pursuit of claims, but concluding that such evidence "goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in *Concepcion*—namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted").

The Eleventh Circuit also easily rejected the same argument that Plaintiffs now make in a final attempt to distinguish *Concepcion*—Washington law would enforce the "blow-up" provision to invalidate the entire arbitration agreement, whereas *Concepcion* dealt with a state-law rule that would have forced parties into non-consensual class-wide arbitration. *Id.* at 1213. As the Eleventh Circuit stated:

> It would be anomalous indeed if the FAA—which promotes arbitration—were offended by imposing upon arbitration nonconsensual procedures that interfere with arbitration's fundamental attributes, but not offended by the nonconsensual elimination

of arbitration altogether. In fact, the parties in *Concepcion* faced no risk of being forced into class arbitration either, because nonconsensual class arbitration was already prohibited under [*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010)]. Moreover, the arbitration agreement in *Concepcion* contained the very same blow-up clause that is present here—further assuring that ATTM was at no greater risk of being forced into class arbitration in *Concepcion* than it is here. Even a cursory reading of the opinion reveals that the *Concepcion* Court described the "fundamental" changes brought about by the shift from bilateral to class arbitration to show that nonconsensual class procedures are inconsistent with the FAA—not to argue for increased class action litigation. Accordingly, *Concepcion* cannot be distinguished on this ground.

*Id.* at 1213-14 (citations omitted). Pointedly, by invalidating arbitration agreements for lacking class-action provisions, a court would be doing precisely what the FAA and *Concepcion* prohibit—leveraging "the uniqueness of an agreement to arbitrate" to achieve a result that the state legislature cannot. 131 S. Ct. at 1747.

**[4]** In conclusion, *Concepcion* controls, the FAA preempts the Washington state law invalidating the class-action waiver, and we reverse the district court's conclusions regarding preemption and substantive unconscionability.

B. *Procedural Unconscionability and Choice of Law*

As noted above, Plaintiffs also allege procedural unconscionability, an inquiry for which *Concepcion* gives little guidance beyond a recognition of the doctrine's continued vitality. *See* 131 S. Ct. at 1750 n.6 ("States remain free to take steps addressing the concerns that attend contracts of adhesion

—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted.").

**[5]** Like substantive unconscionability, procedural unconscionability is a defense to contract formation, and so state law applies. *See Marmet Health Care Ctr., Inc. v. Brown*, No. 11-391, 2012 WL 538286, at *2 (U.S. Feb. 21, 2012) (per curiam) (remanding case for state court determination of whether an arbitration clause is unconscionable and "unenforceable under state common law principles that are not specific to arbitration"); *Concepcion*, 131 S. Ct. at 1746 (stating that 9 U.S.C. § 2 "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" (internal quotation marks omitted)); *see also Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002) ("In determining the validity of an agreement to arbitrate, federal courts should apply ordinary state-law principles that govern the formation of contracts." (internal quotation marks omitted)).

**[6]** But Plaintiffs hail from different states,[4] and the contracts contain choice-of-law provisions. Procedural unconscionability, then, presents a threshold choice-of-law question. When sitting in diversity, we apply the choice-of-law rules of the forum state. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010). Washington courts do not engage in a choice-of-law analysis unless there is "an actual conflict between the laws or interests of Washington and the laws or interests of another state." *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007) (internal quotation marks omitted).

**[7]** Thus, we remand to the district court to apply Washington choice-of-law rules to Plaintiffs' procedural uncons-

---

[4]The parties dispute whether Missouri law, as opposed to Washington law, applies to one of the named plaintiffs. The district court is in the best position to resolve this dispute.

cionability arguments. The first step of that analysis will be to determine whether an actual conflict exists among the laws of the various states involved in this case. That analysis requires the court first to determine whether any of the relevant states allow voiding a contract on grounds of freestanding procedural unconscionability.[5] If the laws all require at least some showing of substantive unconscionability, then Plaintiffs' claim necessarily fails because of our holding that the arbitration clause at issue is not substantively unconscionable. But if a showing of procedural unconscionability would result in success for Plaintiffs under some of the relevant state precedents, the district court must complete the conflict-of-law analysis and decide which Plaintiffs, if any, may benefit.

REVERSED and REMANDED.

---

[5]In at least some of the other states relevant to this case, courts require *both* procedural *and* substantive unconscionability before they will invalidate a contract. *See, e.g.*, *Concepcion*, 131 S. Ct. at 1746 (summarizing California unconscionability law as requiring "a 'procedural' and a 'substantive' element") (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)); *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005) ("To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability.").

Under Washington law, by contrast, the question is not settled. *See Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1259 (9th Cir. 2005) (noting that the Washington Supreme Court has declined to resolve whether procedural unconscionability, standing alone, is sufficient). New Jersey courts have also expressed a measure of uncertainty. *See Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 687 n.10 (N.J. 2010) (stating that "a high level of procedural unconscionability alone *may* not render an entire agreement unenforceable") (emphasis added); *see also Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 n.13 (N.J. Super. Ct. Ch. Div. 2002) ("There do not appear to be any decisions where procedural unconscionability was present but not substantive unconscionability.").