Monica GARCIA, individually and on behalf of all others similarly situated, Plaintiff,

v.

DELL, INC. and Dell Financial Services, LLC, Defendants.

Case No. 12–CV–0940 BEN (NLS).

United States District Court, S.D. California.

Nov. 13, 2012.

---

Abbas Kazerounian, Kazerounian Law Group, APC, Santa Ana, CA, Joshua Swigart, Hyde and Swigart, San Diego, CA, for Plaintiff.

Carl Brandon Wisoff, Douglas R. Young, Racheal Turner, Farella Braun and Martel LLP, San Francisco, CA, Kim Brightwell, Paul Schlaud, Sinead O'Carroll, Reeves & Brightwell, LLP, Austin, TX, for Defendants.

### ORDER COMPELLING ARBITRATION

ROGER T. BENITEZ, District Judge.

In this proposed class action dispute, Defendant Dell Financial Services, LLC ("DFS")[1] moves to compel arbitration.

---

1. Defendant Dell, Inc. was dismissed on May 15, 2012. (Docket No. 7.) Accordingly, DFS

(Docket No. 13.) For the reasons stated below, the Court **GRANTS** Defendant's motion to compel arbitration.

## BACKGROUND

Defendant DFS is a Delaware limited liability company engaged in the business of, among other things, providing servicing functions for Dell Business Credit Accounts ("DBC Accounts"), which are credit accounts that small-to-medium sized businesses use to finance the purchase of computer related goods and services from Dell, Inc. According to DFS's records, on June 1, 2009, the Montegna Law Office applied online for and obtained a DBC Account to finance and purchase products from Dell.

When the Montegna Law Office applied online and created a DBC Account, it provided contact information, including a telephone number to the Montegna Law Office, and signed a Consumer Agreement ("Agreement") which included an arbitration clause. The arbitration clause stated:

> [A]ny claim, dispute or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity ...) ... arising from or relating to the Credit Agreement or the relationships which result from this Credit Agreement, including the validity or enforceability of this arbitration provision, any part thereof or the entire Credit Agreement ("Claim") shall be decided, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules and procedures of the arbitration administrator.

(Agreement at 7.)

The arbitration clause also stated that: It is the intent of the parties to require Claims to be submitted to arbitration on an individual basis only. **Claims sub-**

ject to this arbitration provision may not be joined or consolidated in arbitration with any Claim of any other person or be arbitrated on a class basis, in a representative capacity on behalf of the general public or on behalf of any other person, unless otherwise agreed to by the parties in writing.

(*Id.* (emphasis in original).)

There was also a provision in the Agreement addressing telephone monitoring, which stated that "[t]elephone communications with Lender or its assigns or service providers (including DFS) may be monitored and recorded, in accordance with applicable law." (*Id.* at 6.)

On April 4, 2012, a customer service representative called the Montegna Law Office on behalf of DFS. The representative called the number in its file for the Montegna Law Office and spoke to Plaintiff, an employee of the Montegna Law Office. During this telephone call, which was recorded, the representative asked to speak to someone regarding a business matter. Plaintiff informed the representative that no one was available, but asked for and received a contact number. Finally, Plaintiff asked if the call was being recorded, and the representative responded that it was, and that telephone calls were usually recorded.

Plaintiff brought this action on April 17, 2012. The complaint alleges common-law and statutory invasion of privacy, negligence, and unlawful and fraudulent business practices, and seeks statutory and punitive damages. Defendant has moved to compel arbitration, based on the arbitration clause in the Agreement.

## DISCUSSION

■ Defendant's motion to compel arbitration is governed by the Federal Arbi-

---

is the only remaining defendant in this action.

tration Act ("FAA"). A district court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Id.* "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999) (internal quotation marks omitted).

Defendant moves to compel arbitration on the basis that the arbitration clause in the Agreement mandates that this action be arbitrated. Plaintiff advances several arguments as to why the Court should not compel arbitration. Each will be addressed in turn.

## I. AGREEMENT TO ARBITRATE

As stated by the court in *Lifescan*, this Court must determine whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue. Both parties agree that a valid contract which included an arbitration agreement existed between the Montegna Law Office and Defendant. However, the parties dispute whether the Agreement encompassed the dispute at issue and whether the Agreement applies to Plaintiff as a non-signatory.

The United States Supreme Court has held that there is a "presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks and alteration omitted). In this case, the arbitration clause is indeed susceptible of an interpretation that covers the asserted dispute because the arbitration clause broadly covers any dispute or controversy arising from the Agreement, and the Agreement contains a clause explicitly addressing telephone monitoring. Therefore, the arbitration clause encompasses the dispute at issue.

Plaintiff contends that because she was not a party to the contract made between Defendant and the Montegna Law Office, the arbitration clause in the contract does not apply to her and cannot be compelled. The case most analogous to the present one appears to be *Amisil Holdings Ltd. v. Clarium Capital Management*, 622 F.Supp.2d 825 (N.D.Cal.2007).

In *Amisil*, the plaintiff entered into an agreement that included an arbitration clause with the defendant company. *Id.* at 829. The plaintiff brought suit against both the company and individual members of the company, and the defendants sought to compel arbitration. *Id.* Plaintiff argued that since the individual defendants were not signatories to the arbitration agreement, they could not compel arbitration. *Id.* at 830. The court noted that a "non-signatory may be bound by an agreement to arbitrate under ordinary contract and agency principles, such as 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* (internal quotation marks omitted). The court examined existing case law and held that agents of a signatory can compel the other signatory to arbitrate "so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents (*Letizia*) and (2) the claims against the agents arise out of or relate to the

contract containing the arbitration clause (*Britton* )." *Id.* at 832 (citing *Letizia v. Prudential Bache Secs., Inc.,* 802 F.2d 1185 (9th Cir.1986); *Britton v. Co-op Banking Grp.,* 4 F.3d 742 (9th Cir.1993)). Ultimately, the court in *Amisil* compelled arbitration because the plaintiff's dispute with the individual defendants had a significant relationship with the contract signed by the plaintiff and the defendant company. *Id.* at 839.

■ Though *Amisil* is factually different in that the defendant was the nonsignatory instead of the Plaintiff as in the present case, that does not prevent its application. Here, as in *Amisil,* the alleged wrongful acts relate to Plaintiff's behavior as an agent of a signatory, and the claims arise out of or are related to the contract containing the arbitration clause. The alleged wrongful acts relate to Plaintiff's behavior as an agent because she was an employee of the Montegna Law Office and she answered the telephone number provided to Defendant. In addition, the claims asserted by Plaintiff relate to the Agreement because Defendant's communication with Plaintiff concerned the financing account associated with the Agreement. Plaintiff's claims further relate to the Agreement because the Agreement contained a section regarding telephone monitoring by Defendant. Both of the prongs established by *Amisil* are satisfied in the present case and compel Plaintiff, a nonsignatory, to comply with the arbitration agreement.

## II. ENFORCEABILITY OF CONTRACT

Plaintiff next argues that the contract is unenforceable because it is ambiguous as to the term "you," procedurally unconscionable because Plaintiff had no independent bargaining power, and substantively unconscionable because the arbitration clause is unilateral. Defendant argues that because of a delegation clause in the Agreement, any issues of enforceability must be taken before an arbitrator.

■ The delegation clause in the Agreement states that "any claim, dispute or controversy ... including the validity or enforceability of this arbitration provision ... shall be decided ... by binding arbitration." (Agreement at 7.) Under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, the district court considers the challenge if a party challenges the agreement that an arbitrator will determine the enforceability of the agreement. *Rent–A–Center, W., Inc. v. Jackson,* —— U.S. ——, 130 S.Ct. 2772, 2779, 177 L.Ed.2d 403 (2010). However, if a party challenges the enforceability of the agreement as a whole, the arbitrator considers the challenge. *Id.*

The plaintiff in *Rent–A–Center* filed a motion under the FAA to dismiss or stay the proceedings and to compel arbitration, and the defendant contended that the arbitration agreement was unenforceable. *Id.* at 2775. The arbitration agreement included a "delegation provision," which provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.*

The court held that "unless [the defendant] challenged the delegation provision specifically, we must treat it as valid under [FAA] § 2, and must enforce it under [FAA] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 2779. In order to determine if the defendant in *Rent–A–Center* challenged the entire arbitration agreement or just the delegation provision, the court looked to the defendant's opposi-

tion to the plaintiff's motion to compel arbitration and noted that the defendant had not specifically mentioned the delegation provision, but rather opposed the entire arbitration agreement. *Id.*

■ Similarly, in this case, Plaintiff does not specifically challenge the delegation clause in her opposition to the motion to compel arbitration, but rather challenges the enforceability of the Agreement as a whole. Under *Rent–A–Center*, the delegation provision of the Agreement should be enforced and any issue of enforceability should be decided by an arbitrator.

### III. VINDICATION OF STATUTORY RIGHTS

■ Plaintiff argues that if the arbitration clause is enforced, she will be unable to vindicate her statutory rights under the California Penal Code because she will be unable to litigate the action as a class and the cost of litigation will outweigh the recovery available under the statute. Plaintiff bases her argument on a number of Supreme Court cases, including *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). As Defendant correctly points out, however, those cases, which involved federal statutes, have been distinguished by the Ninth Circuit from cases involving state statutes, such as the present action. *See Coneff v. AT & T Corp.,* 673 F.3d 1155, 1159 n. 2 (9th Cir. 2012) ("Plaintiffs assert primarily state statutory rights, but *Mitsubishi, Gilmer, Green Tree* and similar decisions are limited to federal statutory rights.")

Additionally, in *Coneff,* the Ninth Circuit declined to follow the reasoning of the Second Circuit, which held in *In re American Express Merchants' Litigation,* 667 F.3d 204, 218 (2d Cir.2012), that an arbitration agreement is unenforceable if "the only economically feasible means for plaintiffs enforcing their statutory rights" is precluded by the agreement. The court in *Coneff* stated that although offering plaintiffs proper economic incentive is a primary policy rationale, "such unrelated policy concerns, however worthwhile, cannot undermine the FAA." 673 F.3d at 1159.

In this case, Plaintiff takes the position that the cost of litigating a single California Penal Code violation would cost between $22,425 and $29,750 with a possible recovery of $5,000. (Opp. at 17 & n. 2.) However, whether the Plaintiff has proper economic incentive alone cannot undermine the FAA and is not reason enough to deem the arbitration agreement unenforceable.

### IV. APPLICABILITY OF AT & T MOBILITY v. CONCEPCION

Defendant cites *AT & T Mobility LLC v. Concepcion,* —— U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), in support of its argument that there was a valid arbitration agreement that encompassed the dispute at issue. Plaintiff argues that the facts of *Concepcion* are distinguishable because in that case there was mutual assent by the parties, and Plaintiff argues that in the present case, there was no assent between Plaintiff and Defendant. Moreover, Plaintiff argues that even after *Concepcion,* unconscionability is still a valid defense to an arbitration agreement.

As discussed above, determination of the arbitration agreement's enforceability is for an arbitrator to determine. Plaintiff's argument regarding the applicability of *Concepcion* to the present case is moot.

### V. ARBITRATION OF A NON-WAIVABLE STATUTORY RIGHT

Plaintiff argues that the arbitration agreement is unenforceable because it

forces her to waive a non-waivable statutory right under California Penal Code § 632. However, as discussed above, under *Rent–A–Center* and the delegation provision of the Agreement, issues of enforceability shall be decided by an arbitrator.

## VI. ARBITRABILITY OF CLAIMS FOR INJUNCTIVE RELIEF

Finally, plaintiff argues that claims for injunctive relief cannot be arbitrated. However, as discussed above, under *Rent–A–Center* and the delegation provision of the Agreement, issues of enforceability shall be decided by an arbitrator.

## CONCLUSION

For the reasons stated above, the Motion to Compel Arbitration is **GRANTED**. The parties are **ORDERED** to proceed immediately to arbitration of these claims. The Court shall retain jurisdiction to enforce any award. This action is **DISMISSED** with leave to re-open at the conclusion of arbitration.

**IT IS SO ORDERED.**