Filed 8/10/15  Kaghazchi v. Mercedes-Benz Financial CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MEHRAN KAGHAZCHI, | |
| Plaintiff and Appellant, | G049981 |
| v. | (Super. Ct. No. 30-2012-00564149) |
| MERCEDES-BENZ FINANCIAL SERVICES USA LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Motion to dismiss appeal.  Motion denied.  Order affirmed.

Vachon Law Firm and Michael R. Vachon for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Donald J. Querio, Erik Kemp and Gregory E. Eisner for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Mehran Kaghazchi entered into a lease for an automobile, for which defendant and respondent Mercedes-Benz Financial Services USA LLC acted as the servicing agent. The lease contained an arbitration provision that included a waiver of class actions. It also stated that if that waiver was found to be illegal or unenforceable, the entire arbitration provision would be severed (poison pill clause).

Plaintiff filed a putative class action alleging several theories of liability, including violation of the California's Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA).[1] Section 1751 of the CLRA prohibits a consumer from waiving any of its provisions. When defendant filed a motion to compel arbitration, plaintiff opposed it, arguing the arbitration provision should be severed pursuant to the poison pill clause. The court granted the motion and this appeal followed. The court properly ordered the parties to arbitrate and we affirm.

Defendant filed a motion to dismiss the appeal on the ground an order granting a motion to arbitrate is not appealable. Plaintiff countered, asserting it could be appealed based on the death knell doctrine. We agree and deny the motion to dismiss.

**FACTS AND PROCEDURAL HISTORY**

In March 2008 plaintiff leased a Mercedes-Benz from Mission Imports (Mission). The standard, preprinted lease (Lease) contained a section entitled "Important Arbitration Disclosures." One paragraph within that section was entitled "Arbitration." (Boldface omitted.)

It stated in part: "The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract." (Boldface omitted.) "1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court. [¶] 2. If such dispute is arbitrated, you and we will give

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

up the right to a trial by a court or a jury trial. [¶] 3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others."

The section further explained: "Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, arbitration section or the arbitrability of any issue), between you and us or any of our . . . successors or assigns, which arises out of or relates to . . . this lease, or any resulting transaction or relationship arising out of this lease shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action."

It went on to provide: "This lease evidences a transaction involving interstate commerce. Any arbitration under this lease shall be governed by the Federal Arbitration Act [(FAA)] (9 USC 1, *et seq.* [*sic*])."

Finally, it specified: "If any clause within this Arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this Arbitration section, and the remainder of this Arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire Arbitration section will be severed and the remaining provisions of this lease shall be given full force and effect as if the Arbitration section of this lease had not been included in this lease."

In the section entitled "Enforceability" (boldface omitted), the Lease provided that it was "subject to the laws of the state where it was signed."

3

After the Lease was signed, Mission assigned it to Daimler Trust; defendant is Daimler Trust's servicing agent. In 2011, after plaintiff defaulted on his payments, defendant repossessed the car. Defendant sent plaintiff a notice of disposition stating its intent to sell the car at auction and thereafter did sell the car. Defendant then sought to collect the deficiency alleged owed by plaintiff.

In April 2012 plaintiff filed a complaint against defendant and Mission for declaratory relief and violation of the Vehicle Licensing Act (§ 2985.7 et seq.; Act) He alleged Mission submitted to him a separate document providing for liquidated damages in violation of the Act, which requires all charges must be contained in one document. The complaint alleged defendant was liable for Mission's conduct as an assignee.

A year later, plaintiff filed the first amended complaint, adding nine putative class action causes of action against defendant, four of which were based on alleged violation of the CLRA by misrepresenting amounts due in the notice of disposition.

After plaintiff rejected defendant's demand to arbitrate, defendant filed a motion to compel arbitration.[2] The court granted the motion, ordering plaintiff to arbitrate the case in an individual capacity and stayed the action until the arbitration was completed.

### APPEALABILITY OF ORDER AND MOTION TO DISMISS

Defendant filed a motion to dismiss the appeal on the ground an order compelling arbitration is not appealable.

The general rule allows a party to appeal only from a final judgment. (Code Civ. Proc., § 904.1) While denial of a motion to compel arbitration is appealable

---

[2] Defendant's first motion was in the federal court after defendant removed the action. Defendant filed a second motion after the matter was remanded. The motion at issue was filed after the action was transferred to the complex panel.

4

(Code Civ. Proc., § 1294, subd. (a)), an order compelling arbitration ordinarily is not because it is interlocutory (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160).

An exception to this rule, upon which plaintiff relies, is the death knell doctrine. It allows immediate appeals from "orders that effectively terminate class claims but permit individual claims to continue." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754; *Baycol*.) This includes a scenario such as the one here where the court ordered plaintiff to individually arbitrate his claims, which order "was the 'death knell' of class litigation through arbitration." (*Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288, abrogated on another ground in *Iskanian v. CLS Transportation Los Angeles*, *LLC* (2014) 59 Cal.4th 348, 366 (*Iskanian*).)

Defendant argues the death knell doctrine applies only when it is unlikely the case will proceed as an individual action. We do not agree this is a requirement. Rather, concern "the plaintiff would have no financial incentive to pursue his or her case to final judgment just to preserve the ability to appeal the denial of the plaintiff's class certification motion" is "[t]he *rationale* of permitting appeal of what would otherwise be an intermediate order." (*Munoz v. Chipotle Mexican Grill, Inc.* 238 Cal.App.4th 291, 292, citing *Baycol*, *supra*, 51 Cal.4th at p. 759, italics added.)

The motion is denied.

## DISCUSSION

### 1. Standard of Review

The only issue before us is a question of law, i.e., whether, under the Lease, the FAA preempts application of the CLRA's rule prohibiting a waiver of class actions. Thus the proper standard of review is de novo. (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 450.)

### 2. FAA Principles and Class Action Waivers

Under the FAA, "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2; section 2.)

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' [Citations.]" (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [131 S.Ct. 1740, 1748]; *Concepcion*.) "'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' [Citation.]" (*Perry v. Thomas* (1987) 482 U.S. 483, 489.)

Although "[t]he FAA contains no express pre-emptive provision, . . . state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477; *Volt*.) "The FAA's displacement of conflicting state law is 'now well-established,' [citation], and has been repeatedly reaffirmed, [citations]." (*Preston v. Ferrer* (2008) 552 U.S. 346, 353.) This includes preemption of state law rules that would interfere with enforcement of arbitration agreements pursuant "to their terms so as to facilitate streamlined proceedings." (*Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1748].)

The well-established principles of the FAA as explicated in *Concepcion*, *supra*, 563 U.S. ___ [131 S.Ct. 1740] govern our case. In *Concepcion* the court addressed the holding in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148

6

(*Discover Bank* rule) that class arbitration waivers in certain adhesive consumer contracts are unconscionable and unenforceable. (*Id*. at pp. 162-163.)

Concepcion overturned the *Discover Bank* rule, holding the FAA preempted it because the rule "stand[s] as an obstacle to the accomplishment of the FAA's objectives. [Citations.]" (*Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1748].) "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Id.* at p. ___ [131 S.Ct. at p. 1748].) Class arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." (*Id.* at p. ___ [131 S.Ct. at p. 1751].) It also "greatly increases risks to defendants" and "is poorly suited to the higher stakes of class litigation" in the absence of judicial review. (*Id.* at p. ___ & fn. 8 [131 S.Ct. at p. 1752 & fn. 8]; see *Iskanian, supra,* 59 Cal.4th at p. 362.)

*3. Enforceability of Individual Arbitration*

The Lease provides arbitration governed by the FAA. In the arbitration provision, the parties waived the right to classwide arbitration. The poison pill clause provides that if this waiver was found to be illegal or unenforceable, the entire arbitration section would be severed. The CLRA, under which plaintiff is suing, grants consumers the right to bring a class action (§ 1781, subd. (a)) and makes it a violation of public policy to waive any provision of that statute. (§ 1751.) Plaintiff concludes section 1751 makes the class arbitration waiver illegal and unenforceable, thus requiring severance of the entire arbitration provision. This argument ignores *Concepcion*.

Here, the arbitration provision clearly and unequivocally requires the parties to arbitrate and only on an individual basis. Under the rationale of *Concepcion*, the section 1751 antiwaiver statute prevents enforcement of the arbitration provision according to its terms by depriving the parties of the benefits of arbitration to which they contracted in the Lease. "[T]he FAA preempts state statutes which provide that certain

actions may be maintained in court regardless of any arbitration agreements to the contrary. [Citation.]" (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1566.)

Plaintiff contends section 1751 must control because the state police power gives California the right to enact a statute prohibiting a waiver of provisions of the CLRA. We acknowledge the CLRA's antiwaiver section serves an important purpose of protecting California's consumers. But "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1753].) "'[R]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.'" (*Iskanian, supra*, 59 Cal.4th at p. 362.) "*Concepcion* held that the FAA does prevent states from mandating or promoting procedures incompatible with arbitration." (*Id*. at p. 366.) The antiwaiver provision in the CLRA is such a procedure.

Alternatively, plaintiff maintains that severing the arbitration provision pursuant to the poison pill clause is consistent with the primary purpose of the FAA that arbitration agreements be "'enforced according to their terms.'" (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1748].) As support he points to the choice of law clause that the Lease is "'subject to the laws of the state where it was signed.'" He insists that clause, and as a result section 1751, controls, despite the specific agreement the arbitration is to be governed by the FAA. Plaintiff repeatedly cites to *Volt, supra*, 489 U.S. 468 for the proposition that the arbitration provision must be interpreted according to its terms "even if doing so results in a denial of a petition to compel arbitration." This argument is flawed for several reasons.

First, it is based on a false premise, i.e., that California law applies to the exclusion of the FAA. The agreement specifically states the FAA is to govern any arbitration. The choice of law provision merely states the Lease is "subject to" the law where the Lease is executed and it does not specifically refer to the arbitration provision.

8

Plaintiff cites no authority for the proposition that, based on the language of the Lease and specifically the language of the arbitration section, California law supplants the FAA. In fact he concedes the FAA controls when he states a choice of law provision applies to the entire agreement "unless otherwise stated." Here, it was otherwise stated.

Second, plaintiff overextends the holding in *Volt* and the case is inapt. *Volt* merely held that the FAA did not preempt the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) where the parties had specifically agreed to use California arbitration rules. (*Volt*, *supra*, 489 U.S. at p. 479.) This was true even though the consequence was that arbitration was stayed until related litigation was resolved under Code of Civil Procedure section 1281.2. *Volt*'s critical point was that "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . ." (*Volt*, at p. 479.)

According to *Volt*, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Volt*, *supra*, 489 U.S. at p. 476, fn. omitted.) "Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend . . . any . . . policy embodied in the FAA." (*Ibid*.) The upshot of *Volt*, then, is that the FAA requires agreements to be interpreted according to the terms for arbitration, i.e., the actual rules and procedures set out in the arbitration agreement.

And *Volt* reiterated "that the FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citations.]" (*Volt*, *supra*, 489 U.S. at p. 478.)

Plaintiff also tries to prop up the poison pill clause by arguing *Concepcion* overturned the *Discover Bank* rule because it would have required the parties to engage in nonconsensual classwide arbitration. By contrast, he asserts, the parties here agreed to sever the arbitration section if the class action waiver was deemed illegal or unenforceable. This distinction is unavailing.

"'[T]he arbitration agreement in *Concepcion* contained the very same blow-up clause that is present here—further assuring that [the defendant] was at no greater risk of being forced into class arbitration in *Concepcion* than it is here. Even a cursory reading of the opinion reveals that the *Concepcion* Court described the 'fundamental' changes brought about by the shift from bilateral to class arbitration to show that nonconsensual class procedures are inconsistent with the FAA—not to argue for increased class action litigation. Accordingly, *Concepcion* cannot be distinguished on this ground.'" (*Coneff v. AT&T Corp.* (9th Cir. 2012) 673 F.3d 1155, 1160, quoting *Cruz v. Cingular Wireless, LLC* (11th Cir. 2011) 648 F.3d 1205, 1214.)

Further, poison pill clauses have been routinely rejected as being preempted by the FAA. (E.g., *Murphy v. DirecTV, Inc.* (9th Cir. 2013) 724 F.3d 1218, 1224, 1228 ["*Concepcion* precludes such state laws"]; *Coneff v. AT&T Corp.*, *supra*, 673 F.3d at p. 1160*; Cruz v. Cingular Wireless, LLC, supra*, 648 F.3d at pp. 1207, 1214; *Litman v. Cellco Partnership* (3d Cir. 2011) 655 F.3d 225, 228, 231, fn. 8.)

Plaintiff counters with *Imburgia v. DIRECTV, Inc.* (2014) 225 Cal.App.4th 338, certiorari granted *sub nom. DIRECTV, Inc. v. Imburgia* (Mar. 23, 2015) ___ U.S. ___ [135 S.Ct. 1547] (*Imburgia*). In *Imburgia* the parties signed a contract containing an arbitration provision specifying it was to be governed by the FAA. It included a poison pill clause that stated the arbitration provision would not be enforced if the class action waiver would be unenforceable under the "law of your state." (*Imburgia*, *supra*, 225 Cal.App.4th at p. 341.) After plaintiff filed a CLRA action, the court denied a motion for

10

arbitration on the basis that California law, i.e., the section 1751 antiwaiver statute, controlled to the exclusion of the FAA. (*Id.* at p. 347.)

The central issue in *Imburgia* was the interpretation of the "law of your state." The court held it "operate[d] as 'a specific exception to the arbitration agreement's general adoption of the FAA.'" (*Imburgia*, *supra*, 225 Cal.App.4th at p. 344, italics omitted.) The court also held that to the extent there was ambiguity as to which provision should be applied, the language should be construed against the defendant as the drafter of the agreement. (*Id*. at pp. 344-345.)

But our case is different. The poison pill clause does not contain a "specific exception" to FAA governance of arbitration. Nor does it premise unenforceability of the class action waiver on California law, exclusive of the FAA. Rather, the poison pill clause states only that it is effective if the class action waiver is "found to be illegal or unenforceable." And the choice of law provision merely states the Lease is "subject to" California law,[3] and makes no reference to the arbitration provision or the poison pill clause. *Imburgia* recognized the significance of this difference when it distinguished cases where the poison pill clause did not specifically provide state law would determine whether the class action waiver was enforceable. (*Imburgia*, *supra*, 225 Cal.App.4th at pp. 345-346.)

Thus, on its facts, *Imburgia* does not apply to the case before us. Given that, we have no need to address the soundness of the legal principles. We note, however, that the precedential value of *Imburgia* is questionable, given the grant of certiorari.

In sum, plaintiff's interpretation of the arbitration provision and the poison pill clause is erroneous because it would improperly allow state law to control over and

---

[3] See *Murphy v. DirecTV, Inc*., *supra*, 724 F.3d at p. 1226, which held that section 2 of the FAA "*is* the law of California" and "has *always* preempted states from invalidating arbitration agreements that disallow class procedures."

11

against the plain language of the arbitration section that the FAA is to govern. As stated in *Concepcion*, the arbitration provision is to be enforced according to its terms to fulfill the primary purpose of the FAA. Because arbitration is founded in contract, the parties "may agree to limit the issues subject to arbitration, [citation], to arbitrate according to specific rules, [citation], and to limit *with whom* a party will arbitrate its disputes, [citation]." (*Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at pp. 1748-1749].) The terms of the arbitration section specified arbitration would be between plaintiff and defendant only. Thus, the court properly applied the FAA to the arbitration provision when it ordered individual bilateral arbitration.[4]

## DISPOSITION

The motion to dismiss is denied. The order is affirmed. Defendant is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

.

---

[4] Our analysis and conclusion are entirely consistent with the recent decision in *Sanchez v. Valencia Holding Co., LLC* (Aug. 3, 2015, S199119 ) ___ Cal.4th ___ [2015 WL 4605381].