**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN MURPHY; GREG MASTERS; ROBERTA WEISS, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>DIRECTV, INC.; DIRECTV MERCHANDISING, INC.; DIRECTV ENTERPRISES, LLC; DIRECTV HOLDINGS LLC; THE DIRECTV GROUP, INC.; BEST BUY STORES, L.P.,<br><br>*Defendants-Appellees*. | No. 11-57163<br><br>D.C. No. 2:07-cv-06465-JHN-VBK<br><br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Jacqueline H. Nguyen, District Judge, Presiding

Argued and Submitted
May 6, 2013—Pasadena, California

Filed July 30, 2013

Before: John T. Noonan, Kim McLane Wardlaw,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Wardlaw

## SUMMARY[*]

### Arbitration

The panel affirmed the district court's order compelling plaintiffs in this putative class action to arbitrate with satellite television provider DirecTV, and reversed the district court's order compelling plaintiffs to arbitrate with electronic retailer Best Buy.

Plaintiffs charged DirecTV and Best Buy with violations of state law, alleging that that Defendants presented certain DirecTV service equipment, such as receivers and digital video recorders, as though they were for sale at Best Buy stores when in fact the Defendants considered the transactions to be a lease rather than an outright purchase. The DirecTV's Customer Agreement required arbitration of certain disputes, but Best Buy was not a party to that agreement.

The panel held that the arbitration agreement between plaintiffs and DirecTV was enforceable under *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011), which held that Section 2 of the Federal Arbitration Act preempts the State of California's rule rendering unenforceable — as

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unconscionable — arbitration provisions in consumer contracts that waive collective or class action proceedings.

The panel held that Best Buy, which was not a party to the Customer Agreement, was not entitled to the benefit of the arbitration clause. The panel held that neither equitable estoppel nor the third-party beneficiary doctrine permitted Best Buy to enforce DirecTV's arbitration agreement, and that the Independent Retailer Agreement between Best Buy and DirecTV expressly disavowed an agency relationship. The panel therefore reversed the district court's order compelling plaintiffs to arbitrate with Best Buy.

**COUNSEL**

F. Paul Bland, Jr. (argued), Public Justice, P.C., Washington, D.C.; Leslie A. Bailey, Public Justice, P.C., Oakland, California; Robert S. Green, Green & Noblin, P.C., San Francisco, California; and Michael R. Reese, Reese Richman LLP, New York, New York, for Plaintiffs-Appellants.

Melissa D. Ingalls (argued), Robyn E. Bladow, and Shaun Paisley, Kirkland & Ellis LLP, Los Angeles, California, for Defendants-Appellees DirecTV, Inc., DirecTV Merchandising, Inc., DirecTV Enterprises, LLC, DirecTV Holdings LLC, and The DirecTV Group, Inc.

Roman M. Silberfeld (argued), Michael A. Geibelson, and Rebecka M. Biejo, Robins, Kaplan, Miller & Ciresi LLP, Los Angeles, California, for Defendant-Appellee Best Buy Stores, L.P.

**OPINION**

WARDLAW, Circuit Judge:

In *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011), the Supreme Court held that Section 2 of the Federal Arbitration Act ("FAA") preempts the State of California's rule rendering unenforceable—as unconscionable— arbitration provisions in consumer contracts that waive collective or class action proceedings, *see Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005) (the "*Discover Bank* rule"), reasoning that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 131 S. Ct. at 1748. This putative consumer class action, filed before *Concepcion* was decided, but pending in the district court when *Concepcion* issued, charges satellite television provider DirecTV and electronic retailer Best Buy with violations of California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"). We must decide whether *Concepcion* applies to the unique arbitration clause in the customer service agreement between DirecTV and individuals who believed they purchased DirecTV equipment from Best Buy stores and, if so, whether Best Buy, which is not a party to that agreement, is entitled to the benefit of the arbitration clause. The district court compelled arbitration of all claims against DirecTV and Best Buy. We affirm as to DirecTV, but reverse as to Best Buy.[1]

---

[1] In a pair of February 11, 2011 minute orders, the district court granted motions to dismiss filed by DirecTV and Best Buy, eliminating several of Plaintiffs' claims from the lawsuit. Plaintiffs referenced these minute orders in their Notice of Appeal, but did not raise them in their Opening

## I.

A summary of the alleged scheme to deceive consumers is necessary to understand the relationship between Best Buy and DirecTV and the claims against them. Plaintiffs allege that Defendants present certain DirecTV service equipment, such as receivers and digital video recorders, as though they were for sale at Best Buy stores when in fact the Defendants consider the transaction to be a lease rather than an outright purchase. Plaintiffs claim that even after the Defendants began offering the equipment in question only for lease, customers continued to receive receipts at Best Buy stores that suggested the equipment had been purchased–most notably because the word "SALE" was printed in bold, capitalized letters at the top of the receipts. Even after language on the receipt was changed to include references to a "lease," Plaintiffs allege that the new language was "buried" in fine print that most consumers would not notice or understand.[2] Plaintiffs claim that the Defendants crafted oppressive and unfair lease terms, including unexpected and unreasonable fees.

---

Brief. Therefore, we do not review those minute orders. *See Bell v. City of Boise*, 709 F.3d 890, 896 n.8 (9th Cir. 2013). However, as a result of those orders, Roberta Weiss (a California resident) is the only named plaintiff with remaining claims pending against Best Buy.

[2] Plaintiffs acknowledge that in some cases the defendants provided customers with a "Lease Addendum," but argue that this document also is not an adequate disclosure of the terms of equipment acquisition because the addendum was provided to customers only after equipment was already installed and activated in their homes. Plaintiffs allege that the defendants considered the Lease Addendum enforceable even against customers who had never received or signed one.

When a consumer becomes a DirecTV customer, he or she receives a "Customer Agreement" that governs the relationship between DirecTV and its subscribers. Section 9 of the Customer Agreement, entitled "Resolving Disputes," provides that all disputes between DirecTV and its customers "will be resolved only by binding arbitration." Subsection 9(c)(ii) of the Customer Agreement provides: "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity." However, the Customer Agreement also sets forth a so-called "jettison clause": "If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable." The subsequent section, Section 10 ("Miscellaneous"), contains a subsection (b), which reads:

> The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

DirecTV has long maintained that the Customer Agreement means that Plaintiffs' claims must be resolved through arbitration. In March 2008, it moved the district court to compel arbitration. DirecTV argued that the law of named plaintiffs John Murphy and Greg Masters's residences

(Georgia and Montana, respectively) applies and permits enforcement of the class arbitration ban.[3]   Plaintiffs contended that California law, which at the time included the *Discover Bank* rule, governed the enforceability of the Customer Agreement's class waiver.   Concluding that California law applied, the district court declined to compel arbitration.   We affirmed the district court's choice of law ruling.  *See Masters v. DirecTV*, *Inc.*, Nos. 08-55825, 08-55830, 2009 WL 4885132, at *1 (9th Cir. Nov. 19, 2009) (unpublished).

Because the *Discover Bank* rule rendered DirecTV's class arbitration ban unenforceable, Section 9's jettison clause was triggered, permitting litigation in the district court to continue for almost a year and a half.  Then, the United States Supreme Court decided *Concepcion*, prompting DirecTV to successfully move the district court to reconsider its prior order.  Piggybacking on DirecTV's Customer Agreement, Best Buy also successfully moved to compel arbitration. Plaintiffs timely appealed.  We review the orders compelling arbitration de novo.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1152 (9th Cir. 2004) ("The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo.").

## II.

"With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in

---

[3] Named plaintiff Roberta Weiss did not file suit until March 2010.  Her complaint was consolidated with the instant litigation shortly thereafter.

contracts involving interstate commerce." *Kramer*, 705 F.3d at 1126.  Under the FAA:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  As the Supreme Court has noted, FAA § 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Concepcion*, 131 S. Ct. at 1745.  However, fundamentally an arbitration agreement is contractual in nature.  *Rent-A-Center*, *West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010) (observing that the "FAA reflects the fundamental principle that arbitration is a matter of contract").  Thus, the FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms."  *Id.* (internal citation omitted).

## A. DirecTV

"Applying *Concepcion* retroactively to the arbitration provision," the district court held that "the class action waiver is not unconscionable, and therefore, the arbitration provision is enforceable." We agree.[4]

Plaintiffs argue that Section 9 of DirecTV's Customer Agreement, which requires binding arbitration, is unenforceable due to the jettison clause set forth in subsection 9(c). They maintain that as of April 24, 2007 and April 24, 2010, the effective dates of the Customer Agreements to which Plaintiffs are parties, "the law of [California] would [have found] this agreement to dispense with class arbitration procedures unenforceable," rendering the "entire Section 9 unenforceable." Before 2011, the *Discover Bank* rule had not yet been overruled by the Supreme Court, so Plaintiffs cling to the notion that the rule still governs the interpretation of their arbitration agreement today. This argument misapprehends the doctrine of preemption and the rationale of the Supreme Court's ruling in *Concepcion*.

Importantly, the FAA meant what the Court in *Concepcion* says it means—that the Customer Agreement's

---

[4] The district court found that Plaintiffs received the Customer Agreement containing the arbitration provision, and were bound by the contract, even if they did not read it. In their Reply Brief, Plaintiffs attempt to challenge this conclusion. However, Plaintiffs did not argue in their Opening Brief that they did not "assent to arbitration," and therefore they have waived this argument. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). In any event, the district court's finding that Plaintiffs received the Consumer Agreement and continued to accept DirecTV's services is not clearly erroneous and its conclusion that these actions bound Plaintiffs to the terms of the contract is correct.

class waiver is enforceable—even prior to 2011 when the *Discover Bank* rule was nominally in effect. That is because the Supreme Court's "construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994); *see also Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1090 (9th Cir. 2010) ("[W]hen a court interprets a statute, even an ambiguous one, and even when that interpretation conflicts with the court's own prior interpretation, the new interpretation is treated as the statute's one-and-only meaning."). Thus, § 2 of the FAA has *always* preempted states from invalidating arbitration agreements that disallow class procedures. The parties' agreement that state law would govern the enforceability of the arbitration requirement was not an agreement to rely on state law that "creates a scheme inconsistent with the FAA." *Concepcion*, 131 S. Ct. at 1748.

Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, *is* the law of California and of every other state. The Customer Agreement's reference to state law "does not signify the inapplicability of federal law, for 'a fundamental principle in our system of complex national polity' mandates that 'the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982) (quoting *Hauenstein v. Lynham*, 100 U.S. 483, 490 (1880)); *see also Brown v. Investors Mortg. Co.*, 121 F.3d 472, 476 (9th Cir. 1997) ("The fact that the parties chose to apply the laws of Washington, rather than the laws of another state, does not mean the parties decided that federal law should not apply.").

It follows that, under the doctrine of preemption, the *Discover Bank* rule is not, and indeed never was, California law.  Simply put, "state law is *nullified* to the extent that it actually conflicts with federal law."  *De la Cuesta*, 458 U.S. at 153 (emphasis added).  Thus, Plaintiffs' contention that the parties intended for state law to govern the enforceability of DirecTV's arbitration clause, even if the state law in question contravened federal law, is nonsensical.[5]  A contract cannot be unenforceable under state law if federal law requires its enforcement, because federal law is "the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2. Section 9 of the Customer Agreement provides only that the arbitration agreement will be unenforceable if the "law of your state" disallows class waivers, which California law does not—and could not—under the FAA as interpreted in *Concepcion*.

Plaintiffs cite no cases to the contrary.  For instance, Plaintiffs rely heavily on *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), for the proposition that parties may enter a contract whose terms diverge from the requirements of federal law.  In *Wolens*, the Supreme Court held that the federal Airline Deregulation Act, which displaces state laws regulating airline rates, routes, and services, *see id.* at 232, preempted claims brought under state consumer protection laws that served in effect as a "means to guide and police the

---

[5] That the Customer Agreement may have been drafted and entered into with the *Discover Bank* rule in mind does not change the fact that "the law of your state" cannot include a rule that a federal statute, as interpreted by the Supreme Court, bars states from imposing.  Under *Concepcion*, states simply lack the power to render class arbitration waivers unenforceable as unconscionably exculpatory.

marketing practices of the airlines," *id.* at 228. However, the Court held that the Act does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* Plaintiffs read this language broadly, arguing that when a party to a contract promises to follow the substance of state law, it is bound to do so even if federal law would otherwise preempt it. But *Wolens* stands only for the proposition that contracting parties can enforce the substantive terms of a private agreement even if they exceed the requirements of federal law. *Wolens* does not hold that contract language referencing state law transforms otherwise preempted state contract-law doctrines into enforceable private obligations; in fact, it implies that the opposite is true. *See id.* at 233 ("This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.").

Nor does Plaintiffs' position find support in the Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468 (1989). While *Volt* does indicate that the terms of an arbitration agreement may be enforced even if they require procedures not contemplated by the FAA, the unique posture of *Volt* is a far cry from this case. In *Volt*, the California Court of Appeal had held that, by incorporating state law into an arbitration agreement, the parties agreed to be bound by a California rule authorizing courts to stay arbitration pending resolution of related litigation involving third parties. *Id.* at 471–72. The Court only reviewed the California Court of Appeal's construction of the contract's choice-of-law provision to the extent necessary to determine

whether it was contrary to federal law, and concluded that it was not. *See id.* at 474–76. The Court held that, "assuming the choice-of-law clause meant what the Court of Appeal found it to mean," i.e., that the arbitration agreement incorporated California procedural rules, *id.* at 476, the California rule at issue was not preempted by the FAA. *Id.* at 479.

The Court in *Volt* emphasized "that the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review." *Id.* at 474. As Justice Brennan's dissent noted, the Court declined to review the California Court of Appeal's holding that the contract at issue "would be governed solely by the law of the State of California, to the exclusion of federal law." *Id.* at 480 (Brennan, J., dissenting). Thus, the *Volt* majority had no occasion to consider whether the state court's construction of the contract at issue was correct. Here, Plaintiffs' contract interpretation arguments are squarely presented, and our reasons for rejecting them largely mirror the analysis of the *Volt* dissenters. *See id.* at 490 ("[T]he literal language of the contract–'the law of the place'– gives no indication of any intention to apply only state law and exclude other law that would normally be applicable to something taking place at that location. By settled principles of federal supremacy, the law of any place in the United States includes federal law."). But even the California Court of Appeal's (nonprecedential) analysis in *Volt* is distinguishable because it proceeded from the premise that, "'[i]n the face of such a choice of laws provision, California law applies *unless preempted by the FAA*.'" *Bd. of Trustees of Leland Stanford Jr. Univ. v. Volt Info. Scis., Inc.*, 240 Cal. Rptr. 558, 560 (Cal. Ct. App. 1987) (depublished) (emphasis added) (quoting *Garden Grove Cmty. Church v. Pittsburgh-Des Moines Steel Co.*, 191 Cal.

Rptr. 15, 20 (Cal. Ct. App. 1983)), *aff'd*, 489 U.S. 468 (1989); *see also Volt*, 489 U.S. at 479 (noting that the California rule in question could be given effect "without doing violence to the policies behind the FAA"). Here, in contrast, the Supreme Court has expressly held that the rule Plaintiffs seek to apply is "an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 131 S. Ct. at 1748.

Under *Wolens* and *Volt*, it is clear that if DirecTV had actually contracted with Plaintiffs to allow class arbitration, it would be required to do so irrespective of *Concepcion*. But DirecTV did exactly the opposite. The Customer Agreement provides that "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity." Under these circumstances, Plaintiffs' argument that by referencing state law, DirecTV incorporated the *Discover Bank* rule by reference as a substantive contract term is especially dubious. The parties agreed not to arbitrate only if state law required the availability of class arbitration procedures to enforce the arbitration clause. *Concepcion* precludes such state laws.

For this reason, many of the parties' various contract interpretation arguments are largely irrelevant to our analysis. For example, Plaintiffs devote extensive briefing to their contention that the clause selecting state law in Section 9 is "far more specific" than the language selecting the FAA in Section 10. They likewise argue that the history of amendments to DirecTV's Customer Agreement over time shows that Section 10's reference to the FAA is inapplicable to the jettison clause in Section 9, and that ambiguities about whether state or federal law is controlling should be

construed against DirecTV as the contract's drafter. These arguments are unavailing because, under *de la Cuesta* and its progeny, there is no conflict between the reference to "the law of your state" in Section 9 of the Customer Agreement and the reference to the FAA in Section 10. Thus, we have no occasion to "choose" which provision of the contract controls the enforceability of the class arbitration ban.

In answering the question "whether the rule of decision is supplied by the laws of State X or by federal law," general "choice-of-law doctrines (and, accordingly, attempts by contracting parties to influence their application with choice-of-law clauses) have no applicability . . . because the relevant rule is supplied by the Constitution itself: a valid federal law preempts any state law purporting to regulate the same issue." *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293–94 (3d. Cir. 2001), *abrogated on other grounds by Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576 (2008); *see also Volt*, 489 U.S. at 488 (Brennan, J., dissenting) (observing that it is "beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law"). For this reason, the reference to the FAA in Section 10 of the Customer Agreement is largely superfluous to our inquiry. The "law of your state" language of Section 9 *already* incorporates § 2 of the FAA. *See de la Cuesta*, 458 U.S. at 157 n.12 ("Paragraph 15 provides that the deed is to be governed by the 'law of the jurisdiction' in which the property is located; but the 'law of the jurisdiction' includes federal as well as state law."). Thus, because the arbitration agreement is enforceable under *Concepcion*, the district court did not err in compelling Plaintiffs to arbitrate their claims against DirecTV.

**B. Best Buy**

The district court determined that, although Best Buy is not a signatory to the Customer Agreement or any other arbitration agreement with Plaintiffs,[6] nevertheless Plaintiffs must submit their claims against Best Buy to arbitration. The district court relied on the doctrine of equitable estoppel, which "'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). The district court reasoned that because Plaintiffs alleged in their complaint "concerted action on the part of DirecTV and Best Buy, the lawsuit against Best Buy is inseparable from the lawsuit against DirecTV." Thus, the distirct court found it "necessary to compel arbitration of Plaintiff's claims against Best Buy."

Best Buy argues that arbitration of Plaintiffs' claims against it is required under three alternative theories: (1) equitable estoppel; (2) agency; and (3) third-party beneficiary. None of these arguments is availing.

**1. Equitable Estoppel**

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*,

---

[6] Although Weiss is the only Plaintiff with claims remaining against Best Buy we use the plural "Plaintiffs" throughout this opinion for consistency.

705 F.3d at 1128 (discussing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)); *accord Rajagopalan v. NoteWorld, LLC*, — F.3d —, 2013 WL 2151193, at *2 (9th Cir. May 20, 2013). We therefore examine the contract law of California to determine whether Best Buy, as a nonsignatory, may seek arbitration under the theory of equitable estoppel.

Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). Under California law, a party that is not otherwise subject to an arbitration agreement will be equitably estopped from avoiding arbitration only under two very specific conditions. Our recent decision in *Kramer* adopted as a controlling statement of California law the equitable estoppel rule set forth in *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009):

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer*, 705 F.3d at 1128–29 (internal alteration, citations, and quotation marks omitted).  This rule reflects the policy that a plaintiff may not, "on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Goldman*, 92 Cal. Rptr. 3d at 543 (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)); *see also Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 1 Cal. Rptr. 3d 328, 337 (Cal. Ct. App. 2003) (reasoning that equitable estoppel applies where a plaintiff "agreed to arbitration in the underlying written contract but now, in effect, seeks the benefit of that contract in the form of damages . . . while avoiding its arbitration provision").   We must analyze whether Best Buy satisfies either of the two *Kramer*/*Goldman* exceptions to the general rule precluding nonsignatories from requiring arbitration of their disputes.

### a.  Reliance on the underlying contract

Under the first *Goldman* prong, equitable estoppel applies when the plaintiff's claims "are 'intimately founded in and intertwined' with the underlying contract obligations." *Jones v. Jacobson*, 125 Cal. Rptr. 3d 522, 538 (Cal. Ct. App. 2011) (quoting *Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440, 446 (Cal. Ct. App. 2005)).  "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." *Goldman*, 92 Cal. Rptr. 3d at 543–44.

Plaintiffs' claims against Best Buy do not rely on, and are not intertwined with, the substance of the DirecTV Customer Agreement or Lease Addendum. Best Buy argues that, in addition to governing the general contours of the customer-provider relationship, the Customer Agreement clarifies that the leased equipment is not the property of the customer, cannot be transferred, and must be returned, rendering the existence of the Customer Agreement a necessary precondition for Plaintiffs' claims. But the Customer Agreement itself merely provides that, *if* a customer is leasing his DirecTV equipment, it is non-transferable and must be returned upon cancellation. The Customer Agreement is factually irrelevant to Plaintiffs' claims against Best Buy, which charge misrepresentations to customers at the point of sale. The complaint is replete with allegations of deceit by Best Buy that have nothing to do with the Customer Agreement. Among other allegations, Plaintiffs claim that Best Buy "sold DirecTV Equipment at Best Buy stores in a manner that reasonable consumers would find indistinguishable from any other sale which occurs at Best Buy"; that "Best Buy receipts given to customers memorializing the transaction contained the word 'SALE' at the top of the receipt in bold, capitalized letters"; and that oral "[r]epresentations were made to some purchasers that the DirecTV Equipment was for sale." None of these allegations rely on the Customer Agreement or attempt to seek any benefit from its terms.

Even if Best Buy is correct that Plaintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel. In California, equitable estoppel is inapplicable where a plaintiff's "allegations reveal no claim of any violation of any duty, obligation, term or condition

imposed by the [customer] agreements." *Id.* at 551. Applying this principle in *Kramer*, we held that Toyota could not compel arbitration of a consumer class action on the basis of arbitration clauses contained in the Purchase Agreements customers entered into with their dealerships. *See* 705 F.3d at 1124–25. We expressly rejected Toyota's argument that the plaintiffs' claims were necessarily intertwined with the Purchase Agreements merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred. *Id.* at 1130–31. Rather, we held that the plaintiffs' causes of action, which, as here, largely arose under California consumer protection law, were not sufficiently intertwined with the Purchase Agreements to trigger equitable estoppel. *Id.* at 1130–32. Likewise, here, the Customer Agreement proves at most the existence of a transaction; Plaintiffs' claims do not depend on the Agreement's terms. The UCL and CLRA allow Plaintiffs to sue Best Buy for misleading consumers regardless of whether or not they signed largely unrelated contracts with DirecTV.[7] *See Rajagopalan*, — F.3d

---

[7] We also note that many of the California cases permitting non-signatories to compel arbitration under an equitable estoppel theory involve contract-based causes of action, such as tortious interference or breach of contract. *See, e.g.*, *Boucher*, 25 Cal. Rptr. 3d at 447 (applying equitable estoppel where plaintiff relied on an employment agreement containing an arbitration clause to allege failure to pay accrued wages, breach of contract, and other claims that were intimately bound up with the substance of the contract); *Metalclad*, 1 Cal. Rptr. 3d at 337–38 (applying equitable estoppel where plaintiff's claims turned on an alleged breach of the underlying contract and fraud in obtaining it). Here, in contrast, Plaintiffs do not seek any contract-related damages; rather, their claims are for violations of consumer protection laws. While we need not foreclose the possibility that a consumer class action might satisfy the requirements for equitable estoppel, the obvious contrast between these cases and *Kramer* suggests that equitable estoppel is particularly inappropriate where plaintiffs seek the protection of consumer protection

at —, 2013 WL 2151193, at *3 (rejecting equitable estoppel theory under Washington law where the plaintiff's lawsuit stated "statutory claims that are separate from the contract itself" (internal alteration and quotation marks omitted)).

In short, Plaintiffs rely not on the Customer Agreement, but on Best Buy's' alleged words and deeds in the course of transactions leading to the acquisition of equipment they believed they purchased, but in fact leased. "Plaintiffs do not seek to simultaneously invoke the duties and obligations of [Best Buy] under the [Customer] Agreement, as it has none, while seeking to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is designed to address are not present." *Kramer*, 705 F.3d at 1134.

### b. Substantial interdependence founded in underlying agreement

Under the second *Goldman* prong, the doctrine of equitable estoppel may apply in certain cases where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for "claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad*, 1 Cal. Rptr. 3d at 334 (internal quotation marks omitted). However, under *Goldman*:

> [M]ere allegations of collusive behavior between signatories and nonsignatories to a contract are not enough to compel arbitration

---

laws against misconduct that is unrelated to any contract except to the extent that a customer service agreement is an artifact of the consumer-provider relationship itself.

between parties who have not agreed to arbitrate: those allegations of collusive behavior must also establish that the plaintiff's claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause. It is the relationship of the *claims*, not merely the collusive behavior of the signatory and nonsignatory parties, that is key.

92 Cal. Rptr. 3d at 545 (internal alteration and quotation marks omitted).

The district court concluded equitable estoppel required arbitration against Best Buy because the allegations in the complaint charged "substantially interdependent and concerted" misconduct. While that is undeniably true, *Goldman* makes clear "that allegations of collusive behavior by signatories and nonsignatories, with no relationship to the terms of the underlying contract," does not justify application of equitable estoppel to compel arbitration. *Id.* at 549.

Mere allegations of collusion are insufficient to trigger equitable estoppel. Even where a plaintiff alleges collusion, "[t]he *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause." *Id.* at 537. As we have already explained, Plaintiffs' claims do not bear the requisite relationship to the Customer Agreement to warrant application of equitable estoppel.

Thus, under California law, Plaintiffs are not equitably estopped from litigating their claims against Best Buy.

## 2. Agency

Best Buy also argues that we may affirm the district court's order compelling arbitration on a theory of agency. In California, "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 28 Cal. Rptr. 3d 752, 756 (Cal. Ct. App. 2005).[8] However, the district court in this case did not find that Best Buy was acting as DirecTV's agent when it sold the equipment, and the record does not reflect that an agency relationship in fact existed.

Even assuming that Best Buy "represents [DirecTV] . . . in dealings with third persons," Cal. Civ. Code § 2295, Best Buy is not entitled to compel arbitration based merely on the fact that it sells DirecTV products in its stores.  Agency requires that the principal maintain control over the agent's actions. *DeSuza v. Andersack*, 133 Cal. Rptr. 920, 924 (Cal. Ct. App. 1976) ("The right of the alleged principal to control

---

[8] Best Buy relies on certain of our cases suggesting that agents of a signatory to an agreement that contains an arbitration provision may compel arbitration if the claims arise out of the agency relationship and relate to the underlying agreement.  However, after *Carlisle*, it is clear that *state* law, not substantive federal law, governs the inquiry.  *Kramer*, 705 F.3d at 1128.

the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency, and has long been recognized as such in the decisional law."); *accord Batzel v. Smith*, 333 F.3d 1018, 1035–36 (9th Cir. 2003). Generally, retailers are not considered the agents of the manufacturers whose products they sell. *See* Restatement (Third) of Agency § 1.01 cmt. g (2006) ("A purchaser is not 'acting on behalf of' a supplier in a distribution relationship in which goods are purchased from the supplier for resale. A purchaser who resells goods supplied by another is acting as a principal, not an agent."); *Alvarez v. Felker Mfg. Co.*, 41 Cal. Rptr. 514, 522 (Cal. Dist. Ct. App. 1964) ("One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit." (internal quotation marks omitted)). Thus, the supplier-retailer relationship is insufficient to render Best Buy DirecTV's agent. Best Buy has presented no evidence, on appeal or before the district court, that DirecTV controlled its behavior in ways relevant to Plaintiffs' allegations.

Indeed, to the extent the record contains any evidence that is probative of the nature of the arrangement between the two companies, it suggests that an agency relationship was expressly disavowed by DirecTV and Best Buy in the "Independent Retailer Agreement" they entered. The "Independent Retailer Agreement" recites that Best Buy is DirecTV's independent sales representative. Paragraph 2 of the agreement recites that "DIRECTV hereby appoints Best Buy as its independent commissioned sales representative to solicit Subscriptions, on the terms and conditions herein,

from its Locations." In paragraph 4.1 of the agreement,[9] the parties expressly provide:

> Best Buy shall conduct all of its DIRECTV System sale, lease, warranty, maintenance, and repair business ("DIRECTV System Business") for its own account and not as an agent for DIRECTV. At the reasonable request of DIRECTV, Best Buy shall display notices to its customers, in such form, places and manner as mutually agreed by Best Buy and DIRECTV, of such fact and that Best Buy and not DIRECTV shall be responsible for all of Best Buy's actions in this regard. DIRECTV disclaims any control over Best Buy's DIRECTV System Business except to the limited extent expressly provided herein and to support and protect its

---

[9] Although the agreement was filed under seal in the district court, we conclude that Best Buy waived any claim of confidentiality as to these portions of the document when its counsel affirmatively represented at oral argument that Best Buy acted as DirecTV's agent in these transactions. The agreement, the contents of which are highly probative of the question at hand, makes clear that the companies agreed that exactly the opposite was true. *Cf. In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982) ("Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking process."). We leave it to the district court to consider on remand whether sanctions are an appropriate response to counsel's apparent violations of the duty of candor toward the tribunal. *See* Model Rules of Prof'l Conduct R. 3.3(a) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").

> activities as an independent commissioned
> sales representative for DIRECTV's Service.

We see no reason to conclude to the contrary, and therefore hold that Best Buy is not entitled to compel arbitration as DirecTV's agent.

## 3. Third-Party Beneficiary

Finally, Best Buy argues that it is a third-party beneficiary of the Customer Agreements, and is therefore entitled to arbitration. In California,[10] "[e]xceptions in which an arbitration agreement may be enforced by or against nonsignatories include where a nonsignatory is a third party beneficiary of the agreement." *Nguyen v. Tran*, 68 Cal. Rptr. 3d 906, 909 (Cal Ct. App. 2007). Best Buy's argument that it meets this exception is unpersuasive.

Best Buy bears the burden of proving that it is a third-party beneficiary of the Customer Agreement. *See Garcia v. Truck Ins. Exch.*, 682 P.2d 1100, 1105 (Cal. 1984) (in bank). A third party may only assert rights under a contract if the parties to the agreement intended the contract to benefit the third party; "[t]hus, the circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement." *Hess v. Ford Motor Co.*, 41 P.3d 46, 51 (Cal. 2002) (internal alteration and quotation marks omitted); *see also* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."). In other words, "[t]he mere fact

---

[10] Again, Best Buy primarily relies upon federal law. However, under *Carlisle* the relevant authority is California state contract law.

that a contract results in benefits to a third party does not render that party a 'third party beneficiary'"; rather, the parties to the contract must have expressly intended that the third party would benefit. *Matthau v. Super. Ct.*, 60 Cal. Rptr. 3d 93, 99 (Cal. Ct. App. 2007). The record here does not reflect such an intent.

The terms of the Customer Agreement do not demonstrate that DirecTV intended to benefit Best Buy through the contract, let alone that its customers did. For one thing, the Customer Agreement never mentions Best Buy. *Cf. Hess*, 41 P.3d at 51 ("'[T]he intention of the parties is to be ascertained from the writing alone, if possible.'" (quoting Cal. Civ. Code § 1639)). In fact, the Customer Agreement contains an entire subsection, Section 7(h), entitled "Third-Party Beneficiary," which specifies that TiVo, Inc. is a third-party beneficiary of the agreement. That subsection does not mention Best Buy. The California Supreme Court has observed that "the rule of construction expressio unius est exclusio alterius; i.e., that mention of one matter implies the exclusion of all others" is "an aid to resolve the ambiguities of a contract." *Steven v. Fid. & Cas. Co. of New York*, 377 P.2d 284, 289 (Cal. 1962). To the extent the Customer Agreement is ambiguous with respect to the parties' intent to benefit Best Buy, that rule of construction militates against concluding that Best Buy is a third-party beneficiary, in light of the fact that DirecTV clearly knew how to provide for a third-party beneficiary if it wished to do so. Thus, we conclude that Best Buy is not entitled to enforce the arbitration agreement as a third-party beneficiary.

Because we conclude that neither equitable estoppel nor the third-party beneficiary doctrine permit Best Buy to enforce DirecTV's arbitration agreement, and determine that

the Independent Retailer Agreement between them expressly disavows an agency relationship, we reverse the district court's order compelling Plaintiffs to arbitrate with Best Buy.

## III.

Fundamentally, our task in cases like this is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Volt*, 489 U.S. at 478. Plaintiffs agreed to arbitrate their claims against DirecTV. They did not agree to arbitrate their claims against Best Buy. Notwithstanding the parties' many imaginative legal arguments, in this case they remain bound by the agreements they made and not by any they did not make. We affirm the district court's order compelling Plaintiffs to arbitrate with DirecTV, and reverse its order compelling them to arbitrate with Best Buy.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.** Each party shall bear its own costs.