ROSENTHAL–ZUCKERMAN, Plaintiff,

v.

**EPSTEIN, BECKER & GREEN LONG TERM DISABILITY PLAN, et al.,** Defendants.

No. CV 13–4249–CBM–CW.

United States District Court, C.D. California.

Signed Aug. 8, 2014.

Ronald Dean, Ronald G. Dean Law Offices, Pacific Palisades, CA, for Plaintiff.

James Hazlehurst, Robert E. Hess, Robert K. Renner, Barger and Wolen LLP, Irvine, CA, for Defendants.

Keith M. Parker, Irvine, CA, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONSUELO B. MARSHALL, District Judge.

This Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 following a trial on the briefs with supporting evidence. The Court finds that Plaintiff is entitled to the disability benefits in dispute, $24,536.13, with interest.

## I. JURISDICTION

This Court has jurisdiction over this matter under 29 U.S.C. § 1132(e).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This is an ERISA case in which the Court must interpret a contractual term in Plaintiff's disability insurance plan (the "Disability Plan"). There is no dispute that Plaintiff is disabled. Rather, the disputed issue is whether contributions to Plaintiff's pension plan as part of her part-time employment constitute "Actual Monthly Residual Earnings" ("AMRE") for purposes of calculating Plaintiff's disability benefit.

Plaintiff was a trial attorney and worked at the law firm Epstein, Becker and Green until she became disabled in 1995. Defendants are:

· Epstein, Becker & Green Long Term Disability Plan;

· Paul Revere Life Insurance Company ("Paul Revere"), the original insurer and administrator of the Disability Plan;

· Unum Insurance Company ("Unum"), which purchased Paul Revere and is now the insurer and administrator of the Disability Plan. All references in

this Order to "Defendants" mean Paul Revere and Unum.

After becoming disabled, Plaintiff began to receive disability benefits from Defendants. To continue receiving disability benefits, Plaintiff has periodically submitted forms to Defendants, including information about Plaintiff's current employment and income she receives. (Plt.'s Trial Brief 2:12–18.). During the relevant time period, Plaintiff worked part-time as a teacher at a high school. (*Id.* at 2:20–22; AR 52, 57.)

In connection with her work at the school, Plaintiff participated in a 26 U.S.C. § 403(b) pension plan (the "§ 403(b) Pension Plan"), which allows Plaintiff to defer a part of her income into a tax-sheltered retirement account that she cannot access until retirement without incurring penalties. (*See* Plt.'s Trial Brief 4:3–13; AR 57.) As part of this § 403(b) Pension Plan, Plaintiff's employer deposits a portion of Plaintiff s bi-monthly compensation directly into a § 403(b) Pension Plan account. (*See, e.g.,* AR 57, 424 (paystubs submitted to Defendants showing § 403(b) contributions).)

The terms of Plaintiff's disability benefits are contained in the Disability Plan Policy document, which Defendants drafted. Under the terms of the Disability Plan Policy, if Plaintiff works part-time, she can still receive her full disability benefit as long as she does not earn 20% or more of her pre-disability income. (Plt.'s Trial Brief 5:25–27; *see* AR 86.) If she earns 20% or more, then there is a pro-rata reduction in her Disability Plan benefit. (Plt.'s Trial Brief 5:25–6:2.) The amount of Plaintiff s Disability Plan benefit is thus determined by calculating Plaintiff's current AMRE and comparing that to her pre-disability income. (*Id.* at 6:8–10.) If her current AMRE is 20% or more of her pre-disability income, then her Disability Plan benefit is reduced.

In June 2010, after reviewing Plaintiff's last pay stub for 2009 and Plaintiff's W–2 tax form, Defendants decided that money deposited by Plaintiff's employer into Plaintiff's § 403(b) Pension Plan constitutes part of her AMRE. (AR 431.) Prior to June 2010, Defendants had not treated these payments as part of Plaintiff's AMRE. (*See id.* at 431, 508.) Once the payments were included into AMRE, Plaintiff's AMRE exceeded the 20% threshold, which led to Defendants imposing a pro-rata reduction in Plaintiff's Disability Plan benefit. (*See id.* at 508.) Based on Defendants' interpretation of AMRE, it had overpaid Plaintiff $56,403.08 because the payments to the § 403(b) Pension Plan should have been included in the calculation of AMRE. (*Id.*) However, Defendants' internal guidelines limit its claim to the previous 24 months of alleged overpayment, so the amount at issue in this case is $24,536.12. (*Id.*)

Plaintiff filed suit on June 13, 2013. Plaintiff seeks a judicial declaration that she is entitled to $24,536.13 plus interest. (*See* Compl. 4:28–5:5 (Docket No. 1).) Plaintiff and Defendants filed simultaneous Trial Briefs on May 13, 2014 and Responding Trial Briefs on May 27, 2014. (Docket Nos. 24, 25, 29, 30.) The Court heard oral argument on July 1, 2014. (Docket No. 32.)

### III. STANDARD OF LAW

■ "[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Thomas v. Oregon Fruit Prods. Co.,* 228 F.3d 991, 993 (9th Cir.2000) (quotation marks omitted). Here, it is undis-

puted that the Court should review Defendants' decision under the *de novo* standard because while the parties dispute how AMRE is defined, Defendants do not have discretion to determine eligibility determine eligibility for benefits or to construe the terms of the plan.

## IV. DISCUSSION

The instant case involves contributions to Plaintiff's § 403(b) pension plan. A § 403(b) pension plan is a tax-sheltered retirement savings plan for employees of non-profit employers. *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 1002 (9th Cir.2010). A § 403(b) pension plan is similar to the popular 26 U.S.C. § 401(k) savings account, which allows the employees of for-profit entities to save for retirement by diverting a pre-tax portion of their income to a retirement account that has preferential tax treatment and which the employee cannot access until he or she retires without incurring a penalty. *See id.*

The question in the present matter is one of contract interpretation. The issue is whether contributions to a § 403(b) pension plan are part of AMRE under the terms of Disability Plan Policy. If the answer is yes, then contributions to Plaintiff's § 403(b) Pension Plan should be included in calculating AMRE and Defendants were correct to reduce her Disability Plan benefit under the Plan. If the answer is no, then Defendants were wrong to reduce her Disability Plan benefit. The Court finds that contributions to Plaintiff's § 403(b) Pension Plan do not constitute AMRE.

### A. The Disability Plan Policy's Definition of AMRE Is Ambiguous

 "A contract or a provision of a contract is ambiguous if it is reasonably susceptible of more than one construction or interpretation." *Castaneda v. Dura–Vent Corp.,* 648 F.2d 612, 619 (9th Cir. 1981). "The existence of an ambiguity in a contract is a question of law." *Port of Portland v. Water Quality Ins. Syndicate,* 796 F.2d 1188, 1194 (9th Cir.1986).

 Plaintiff is an employee of the high school where she teaches. The Disability Plan Policy's definition of AMRE states that AMRE for an employee "means the Employee's salary, wages, commissions, bonuses, fees, and income earned for services performed." (AR 85.) Plaintiff argues the definition of employee AMRE is ambiguous because it is not clear from the plain language of the definition whether payments to her § 403(b) Pension Plan must be included in "salary" or "income earned for services performed." (Plt's Trial Brief 10:21–11:5.) Defendants argue that the definition of AMRE is not ambiguous. (*See, e.g.,* Defs.' Responding Trial Brief 4:3–8:4.) Defendants contend the term "income earned for services performed" includes § 403(b) pension plan contributions because "[t]here are no exceptions and no exclusionary language in the AMRE definition. Given this expansive definition, common sense dictates that AMRE includes all employment income regardless of the form in which it is paid." (*Id.* at 4:8–9 (emphasis in original).)

The Court finds that the Disability Plan Policy's definition of AMRE is ambiguous because it is reasonably susceptible to more than one construction or interpretation. *Castaneda,* 648 F.2d at 619. The definition does not state that contributions to a § 403(b) pension plan constitute AMRE. Indeed, the Disability Plan Policy's definition of employee AMRE is silent as to § 403(b) pension plan contributions and as to pension plan contributions in general. Accordingly, the Disability Plan Policy's definition of AMRE could reasonably be interpreted as including or not

including § 403(b) pension plan contributions.

Furthermore, "actual monthly residual income" by its terms refers to "residual" income—*i.e.*, income remaining after certain items have been removed. Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/residual, last accessed July 21, 2014 (defining "residual" as "remaining after a process has been completed or something has been removed."). This implies the AMRE cannot simply mean "all employment income regardless of the form in which it is paid," as Defendants suggest. (Defs.' Responding Trial Brief 4:8–10.)

Because the Court finds that the Disability Plan Policy's definition of employee AMRE is ambiguous as to whether § 403(b) pension plan contributions constitute AMRE, other rules of contract interpretation must be used to determine whether § 403(b) pension plan contributions constitute AMRE. *Cf. Meckert v. Transamerica Ins. Co.*, 763 F.2d 1071 (9th Cir.1985).

### B. Expressio Unius Est Exclusio Alterius

Plaintiff argues the principle *of expressio unius est exclusio alterius* resolves this case in her favor. This rule of contract interpretation states that "to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary (9th ed.2009); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir.2013) ("the rule of construction expressio unius est exclusio alterius; i.e., that mention of one matter implies the exclusion of all others is an aid to resolve the ambiguities of a contract.") (citation and quotation marks omitted).

The Disability Plan Policy's definition of AMRE for employees is silent as to whether § 403(b) pension plan contributions constitute AMRE. (*See* AR 85.) However, the Disability Plan Policy defines AMRE for other types of persons who might receive disability benefits. (*Id.*) One of these other definitions explicitly includes pension plan contributions. Specifically, the Disability Plan Policy's definition of AMRE for an employee/shareholder—*i.e.*, an employee who, unlike Plaintiff here, owns part of the company for whom he or she works—states: "Employee/Shareholder earnings means the total gross salary, *pension/profit sharing plan contributions* made on behalf of the individual, and the proportionate share of the current year corporate net profit." (*Id.* (emphasis added).) This demonstrates that when Defendants (who drafted the Disability Plan Policy) wanted to include pension plan contributions in the definition of AMRE for a Plan beneficiary, they knew how to do it. Accordingly, Defendants' decision to not mention pension plan contributions in the definition of employee AMRE shows that the definition of employee AMRE does not include § 403(b) pension plan contributions.

Defendants argue that the definition of employee/shareholder AMRE is not relevant to the instant matter because Plaintiff is an employee, not an employee/shareholder. (Defs.' Responding Trial Brief 6:17–7:3.) Defendants are correct that the definition of employee/shareholder AMRE does not control the calculation of Plaintiff's AMRE because she is an employee and not an employee/shareholder. Nevertheless, Defendants' drafting decision to include pension contributions in the definition of employee/shareholder AMRE shows that (1) Defendants understood that pension contributions may be involved in calculating AMRE for Plan beneficiaries and (2) Defendants chose not to include pension contributions in the definition of employee AMRE.

In sum, applying the principle *expressio unius est exclusio alterius* shows that contributions to a § 403(b) pension plan do not constitute AMRE for purposes of Plaintiff's Disability Pension Plan.

## C. Contra Proferentem

Plaintiff argues the doctrine *of contra proferentem* resolves this case in her favor.

> *Contra proferentem*, which is recognized by federal common law and the law of every state and the District of Columbia, holds that if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted. The rule applies in interpreting ambiguous terms in an ERISA-covered plan except where the plan: (1) grants the administrator discretion to construe its terms, (2) is the result of a collective-bargaining agreement, or (3) is self-funded.

*Blankenship v. Liberty Life Assur. Co. of Boston,* 486 F.3d 620, 625 (9th Cir.2007) (citations and quotation marks omitted).

 The parties do not address whether the three exceptions articulated in *Blankenship* apply here. However, courts apply *contra proferentem* only if other rules of contract interpretation have failed to resolve the disputed issue. *Id.* As discussed above, the doctrine *of expressio unius est exclusio alterius* resolves this case in Plaintiff's favor, so the principle of *contra proferentem* does not apply here.[1]

## V. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff is entitled to the disability benefits in dispute, $24,536.13, with interest.[2]

**IT IS SO ORDERED.**

---

1. If the doctrine of *expressio unius est exclusio alterius* did not determine the outcome of this case, then the Disability Plan Policy's definition of AMRE would still be ambiguous and the doctrine of *contra proferentem* may apply. If that were the case, the Disability Plan Policy's definition of employee AMRE would be interpreted in Plaintiff's favor under *contra proferentem. Blankenship,* 486 F.3d at 625.

2. Because the Court finds in Plaintiff's favor on the basis of *expressio unius est exclusio alterius,* the Court need not reach Plaintiff's remaining three arguments: (1) *ejusdem generis;* (2) equitable estoppel; and (3) Plaintiff did not actually or constructively receive the payments deposited by Plaintiff's employer into Plaintiff's § 403(b) Pension Plan.